Vitale v. Howard                    CV-90-204-B    11/02/93

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Alphonse Vitale

v.                                              Civ. No. 90-204-B

Charles H. Howard, III

**O R D E R**

_____Plaintiff brings this securities fraud action against his broker.  Plaintiff alleges that defendant broker wrongfully generated commissions by "churning" securities held in plaintiff's margin account, and that defendant wrongfully purchased and sold these same securities to give the appearance of an active market.[1]  Plaintiff premises his suit on § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and § 9(e) of the Exchange Act, 15 U.S.C. § 78i(e).  Defendant appears pro se.  Presently before me are his motion to dismiss plaintiff's claims and his motion to disqualify plaintiff's counsel.

---

[1] Plaintiff also asserts pendant claims for breach of fiduciary duty and for state securities law violations.

## I.  The Motion to Dismiss

Defendant moves to dismiss plaintiff's claim on the ground that plaintiff, in opening a margin account with defendant's brokerage firm in 1985, allegedly executed an account agreement that "clearly state[d] that should a dispute or controversy arise, the matter is to be heard in Arbitration before the National Association of Securities Dealers, Inc."  Judged against the "less stringent standards" applicable to pro se litigants, see Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988), defendant's "motion to dismiss" is properly viewed as a motion to compel arbitration under the Federal Arbitration Act ("FAA"). See 9 U.S.C. § 4.  Defendant, however, has failed to support his motion with any proof of the agreement's existence or content.[2] While § 4 of the FAA gives federal district courts the authority to order parties to proceed to arbitration in accordance with their agreement, a court obviously cannot compel arbitration unless it is satisfied that a valid agreement exists.  Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 806 F.2d 291, 295 (1st Cir. 1989), abrogated on other grounds by Shearson/American

---

[2]Defendant has merely submitted unsigned examples of margin account agreements containing arbitration clauses.

Exp., Inc. v. McMahon, 482 U.S. 220, 236-38 (1957). I therefore deny defendant's motion. For the following reasons, however, I do so without prejudice and give defendant thirty days in which to submit a renewed motion accompanied by the necessary proof.

First, "courts must receive the [Federal Arbitration Act] hospitably and defend its mechanisms vigilantly and with some fervor." Securities Ind. Ass'n v. Connolly, 883 F.2d 1114, 1119 (1st Cir. 1989), cert denied, 495 U.S. 956 (1990). Here, the agreement that defendant refers to may very well exist. Brokerage account agreements often contain arbitration clauses. Plaintiff also does not expressly deny that he signed such an agreement. By allowing defendant thirty days to come up with the necessary proof, the strong federal policy favoring arbitration agreements is given due weight. See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24 (1983).

Second, plaintiff's federal securities claims and his pendent state claims are all potentially arbitrable. See Shearson/American Exp., 482 U.S. at 236-38 (Exchange Act does not bar arbitration of disputes arising under its provisions, particularly §10(b) claims); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985) (where a motion to compel arbitration is brought pursuant to a valid arbitration agreement, a district

3

court must compel arbitration of pendant state law claims).

Finally, I disagree with plaintiff's assertion that defendant has waived his right to arbitration by not complying with Magistrate Judge Barry's order requiring defendant to seek arbitration by July 1, 1991. To some extent, defendant has complied with the order -- he wrote a letter to the National Association of Securities Dealers ("NASD") on June 11, 1991, requesting that it arbitrate this dispute. He also alleges that the NASD has responded, sending forms for plaintiff to complete.[3]

Although it appears that defendant has taken few, if any, steps beyond his initial letter to NASD, several facts indicate that this delay may not be entirely his fault. First, the alleged agreement is in the possession of defendant's now-bankrupt former employer, Thompson McKinnon Securities, Inc., who has not responded to defendant's requests for information. Second, on July 5, 1991, defendant began serving a one year sentence for insider trading. Since his imprisonment, the record indicates that there may be some confusion as to which party has

_____

[3] The record is unclear as to whether plaintiff has received or completed these forms.

4

the burden of pursuing arbitration.[4]  At the very least, the above-listed facts raise doubts as to whether defendant waived his right to have the NASD arbite this dispute.  Where reasonable, such doubts must be resolved in favor of arbitration. See Page, 806 F.2d at 293.

Moreover, even if these doubts were resolved in plaintiff's favor, plaintiff at best has alleged that defendant's behavior caused some delay.  To prevail on a claim of waiver, however, plaintiff "must show not only that defendant[] delayed in seeking arbitration, but also that such delay caused plaintiff[] prejudice."  Id. at 294.  As plaintiff has not alleged or shown facts indicating such prejudice, his arguments of waiver must be rejected.[5]

---

[4] Initially, the court clerk required defendant to provide status reports.  After defendant's incarceration, however, Judge Devine Court ordered that these reports be provided by plaintiff.

[5] Defendant also moves for dismissal on the grounds that plaintiff offered to settle the suit if defendant would help plaintiff in a similar action against defendant's employer, Thomson McKinnon Securities, Inc.  Defendant contends that, because that action has since been settled, the action here should be dismissed because plaintiff has already recovered and no longer needs his help.  I reject this argument summarily. First, defendant seeks to benefit from a settlement offer he rejected.  Second, the fact that plaintiff has received some compensation from Thomson McKinnon's bankruptcy estate does not

5

## II.  The Motion to Disqualify Plaintiff's Counsel

Defendant also moves to disqualify plaintiff's counsel on conflict of interest grounds.  Defendant contends that counsel represented defendant and/or his company "on numerous issues over the last several years," and has "had access to the defendant's and/or his company's most personal, private and financial records."  In support of his motion, defendant includes a copy of one $7,769.70 bill from plaintiff's counsel for approximately one month of work done in connection with defendant's attempts to gain control of a New Hampshire bank in 1987.[6]  Plaintiff's counsel counters that the representation involved matters bearing absolutely no relation to defendant's employment as a broker for Thomson Mckinnon or to his management of plaintiff's margin

---

affect defendant's potential liability for the claims presently before the Court.

[6] Defendant also attaches a copy of a bill from plaintiff's counsel relating to its representation of the First New Hampshire Bank as an intervenor co-defendant in a suit against Howard for reformation of several promissory notes payable to Howard's company, Occasions, Ltd (First New Hampshire was the assignee of the promissory notes).  As the client number on this bill is different from that listed on the bill for the bank-takeover services, it appears that this was First New Hampshire's bill, not Howard's.  Indeed, plaintiff points out that during the course of the promissory note litigation, Howard was represented by different counsel or appeared pro se.

account.[7]

In a conflict of interest situation, "the relevant inquiry is whether the subject matter of the two representations is 'substantially related'; could the attorney have obtained confidential information in the first suit that would have been relevant to the second." Borges v. Our Lady of the Sea Corp., 935 F.2d 436, 439-40 (1st Cir. 1991); see also Kevlik v. Goldstein, 724 F.2d 844, 850-51 (1st Cir. 1984). At least on their face, the subject matter of the two representations at issue here appear completely distinct. The first representation involved the takeover of a New Hampshire bank; the case at hand involves "churning" and other wrongful activities relating to plaintiff's margin account. Defendant's bill, which provides no description of the information conveyed by defendant to plaintiff's counsel, does nothing to contradict this impression. Defendant also has not pointed out any particular item of confidential information that plaintiff's counsel obtained during the prior representation. See Borges, 935 F.2d at 440. Instead,

_____

[7] Plaintiff's counsel also asserts that the information that defendant provided during this representation is no longer confidential -- it was filed with governmental regulatory agencies and thus has become a matter of public record.

7

he has merely made sweeping assertions that he disclosed "personal, private and financial" information to plaintiff's counsel.  Given the above factors, I cannot conclude that the two matters are "substantially related".  I therefore deny defendant's motion to disqualify plaintiff's counsel.  However, given the importance of preventing unethical conduct, Kevlik, 724 F.2d at 849, and the fact that defendant appears pro se, I will give defendant fifteen days to supplement his motion with an affidavit or other form of proof setting out the similarity between the two representations with more particularity.

### III.  Conclusion

Defendant's motion to dismiss (document no. 25) is denied without prejudice, subject to the following two conditions:  (1) the motion must be renewed within thirty (30) days of the date of this order; and (2) it must be accompanied by appropriate proof of a validly executed Margin Account Agreement between plaintiff and Thompson McKinnon Securities, Inc. and appropriate proof of the existence and content of the arbitration clause allegedly contained therein.  I also deny without prejudice defendant's motion to disqualify the firm representing plaintiff (document no. 26).  Defendant has fifteen (15) days from the date of this

8

order to supplement his motion in the manner specified in Section II of this order. Any renewed motion which does not satisfy the standard established in this order will be denied. Moreover, no extensions of the deadlines established in this order will be granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

November 2, 1993

cc: Charles Dunn, Esq.
    Charles H. Howard, III, pro se